C.V. Kershaw He was also violated in studio loyalty to Mr. Rangel by disparaging him in an open court. Counsel's deficiencies Out-of-circuit authority Says support the position But I don't think they're relevant I'm only interested in Supreme Court Cases Thank you I don't recall The exact quote that you're referring to On page 23 The Supreme Court decisions Are controlled with regards to All these issues in this case And certainly versus Washington These are for straightforward Ineffective decisions of counsel That's the bottom line So then at this point There's general law as it relates to strict We've got two prongs Under the strict level But there's no specific case That goes to Even as close To this case Would you suggest that's true? Well there's certainly no case With identical prongs I think that would be a very rare case What else do you think? Well your honor I would respectfully disagree with regards to Individual deficiencies In trial counsel's performance There are cases that talk about that For example With regards to counsel Non-consulting with Mr. Rangel Before conceding guilt In his opening statement This court has addressed the issue As has the Supreme Court Both in Florida versus Nixon Which was the U.S. Supreme Court decision And this court decided United States versus Thomas Which this court stated Quote, in this case we assume That counsel's concession of guilt Without consultation or consent Is deficient That gets you to the first prong How do you get to the second prong That you did concession On this record Of conduct for which he was not charged And couldn't have been convicted How does that constitute breaches? It constitutes breaches, your honor Because the lesser Uncharged offenses That trial counsel conceded to When you add them together You get the full charge on Burglary, which is what Mr. Rangel Was charged with For his trial counsel's Able to, maybe he was guilty of trespass And maybe he was guilty of theft When you put those two offenses together You have an amount of definition And an amount of burglary Which very likely explains why the jury Was held for 15 minutes and 14 minutes I guess the question That Smith asked Was with the Supreme Court case Can you analogize To the sense that conduct like that Caused some Scrutiny Because that's your burden that you have here Absolutely, your honor You have a bucket desk You have to look at whether or not the Nevada Courts Whether their decision was an unreasonable Interpretation of law Established by the U.S. Supreme Court Absolutely, your honor In this case there are also several points In which the Nevada Supreme Court's decision Was an unreasonable determination Of the fact There are two different areas in which the Nevada Supreme Court really did get it wrong When it comes to a Strict analysis Yes Let me ask you another question In this particular case We had a hearing, right? Aye As to the inexcusableness of counsel Yes, your honor In the counsel paper In the explanation of his decisions Yes Now, given that we had the hearing And given that he gave the explanation Isn't our question now then Whether those decisions Were informed And based on professional judgment Yes, your honor Rather than speculating As to why he did what I mean, many times I get here And we don't have a hearing Or we don't have counsel saying So we have to speculate at that point As to why he could have done or couldn't have done it Now we're at the point where He's told us why So now we have to say Were those decisions Informed and based on Professional judgment Do you agree? Yes In fact, we have precedent that says We find efficient performance Only when Counsel had no strategic Reason for Failing to do certain conduct Seems to be in every one of these Situations That you are challenging counsel Was asked why he did it Every one of his Reasons were tactical Though If I Cannot find that he had no Strategic reasons for doing Any of this Am I bound then To say you lose? No, your honor Some of the answers What I'm really talking about is now standard of review I'm not talking about in general Any single Argument you may make here Now I have to determine whether they were Informed and based on professional Judgment And if they're tactical Then it's when he has no Strategy for what he did Now his strategy may not be What I like It may not be what I would have done But if he had a strategy It seems to me our precedent Would suggest Year through Your honor, in this case Trial counsel's overall strategy By his own testimony Is that he was hoping That some sort of evidence of intoxication Would materialize That was his word Materialize during the trial But through cross-examination I mean, if he knew Then he wasn't going to put Mr. Reckon On the stand I I'm not sure what point he made that decision But yes, his advice to Reynolds Was not justified As long as the convictions you knew That may not have been there before Had anything to do with how the trial went It did, your honor That was I believe The trial attorney's main concern However, when the only Direct evidence he had of Intoxication would Have been Mr. Reynolds' own testimony But he knew he had no other evidence Of intoxication When he was asking questions of police officers Whether or not they performed Field sobriety testimony Pedestrian, which I had never heard of Before, which only invites The prosecutor to get up and say Well, was there any signs of intoxication? No, this was not A strategy, these were hopes and dreams Of this defense attorney And I would submit that that is Not what a reasonably competent attorney Would do Well, at this point, you're saying There is no strategy, it's hopes and dreams And that we can determine that Well, your honor, I think you need to look At the record itself For instance, trial counsel admitted That since his theory of the defense Was voluntary intoxication He should have requested a jury instruction On voluntary intoxication And he didn't do that He conceded that the unauthenticated Reported call from the jailhouse I would submit if you could get going As fast as you can about that But the bottom line is There's no prejudice, he's never done it Your honor, there was absolutely prejudice I assert prejudice On the jury instruction Even you suggest he's never done it So then there should be Any prejudice to the idea That he didn't request it If he was never going to get it anyway Well, I think you have to look at the errors And the question of prejudice as a whole But I'm focusing now on what you're talking about Your argument Which was, why didn't he request The jury instruction I thought that was a funny argument If you're looking at the prejudice as a problem There's no way he would have ever gotten The jury instruction If he had told his client to testify About the intoxication Then he would have been entitled to a jury Your argument is Your bottom line position That he should have called his client My position is that If there was evidence of intoxication He should have presented it And if there was no evidence of intoxication He should have gone with a different theory of defense What was it? What? Your honor, this court Your honor, I would refer This court to the United States Supreme Court Decision in U.S. v. In which, I'll quote from The Supreme Court said Even when no theory of defense is available If the decision to stand trial has been made Counsel must hold the prosecution To its heavy burden of proof Beyond a reasonable doubt By conceding guilt in the opening and closing statements By not making evident your objections Trial counsel failed to do that But wasn't he essentially saying You know, well I mean These facts were These facts were pretty much stored You know But wasn't he really saying Ladies and gentlemen These facts, as you can see Are preserved There had to be something wrong with my client You know, he didn't really burglarize his car He may have done this He may have done that But he didn't burglarize that car I mean, it seems to be a pretty creative way To at least bring some doubt Into a case that's pretty cut and dry How can you call that Defective performance? But because the this and that That he said my client may have committed Were dense amounts of burglary If you look at the car Individually they weren't No, but added together they were He specifically mentioned both trespass and theft I don't know if he gets you there I think it goes back to just this question Which case Which case shows us that Which reports Supreme Court sentence Well, Your Honor, I think it's rare in an ineffectiveness case To have the Supreme Court case with identical facts But when looking at the prejudice The question is whether or not It caused the result of the trial Into doubt as far as whether It can be reliable Here there was a breakdown of the adversarial process Oh, okay I see I'm out of time I'll send that, thank you May it please the court I'm Vic Solsey, Senior Deputy Attorney General For the Court and the Attorney General I'd like for a minute to back up And view this case from the standpoint Look, I'll be honest I'm a prosecutor But you've got to feel bad for this defense attorney In this case A woman comes out of the store Sees the guy in the car He's prying the radio out of the dashboard Her bag's from the 99 cent store The stuff's strewn all over the car She follows him into another store Asks him to call the police They call the police The police show up He makes an admission to the police And he says, yeah, the stuff you're looking for Is over by the Christmas trees Well, it was over by the Christmas trees The stuff that's supposed to be in the victim's car Now the guy is acting A little bit bizarre Regal's acting a little bit erratic I think is the term used When the woman shows up, the victim shows up In the parking lot She says, what you did in my car He says, no, your car is my car The attorney, who has no direct evidence And we know this is the Evidence Rehearing Starts at page 169 in the excerpts And he says, I have no direct evidence Of intoxication at all He's got to defend the case on something He said, there were a couple of different things He was going to do As my post of counsel said Suggests in the Supreme Court Second crime One of his defense strategies Was to hold the state to their burden The second one was to Imply Intoxication Although there was no actual evidence He's not going to get the instruction Out of base And he did still argue that issue And the other argument under This concession of guilt Issue Is that what he conceded to And this is a This is a specific issue He did not concede to an issue That was charged, two crimes that was charged So Florida vs. Nixon The next case in the US Supreme Court Is directly on point He didn't concede to the burglary He conceded to a crime that was not Charged as a strategic Decision to say And this is classic, you see this In especially murder cases Oh my client may be a bad guy My client may be an adulterer My client may have committed burglary or robbery Or sexual assault, but he didn't commit Murder, it's not an uncommon thing And So he suggests that the malicious Destruction It's been a go, it's been in your argument He used to be counsel He's suggesting this was done without the Permission of rank But that's not what The record, they discussed that The evidence you're hearing, the judge Had some concerns with the concession He was canvassed by the judge And he agreed, I would point something else out This claim is related to the claim Of the alleged breakdown of the Relationship When he's canvassed by the trial court judge About this concession To an uncharged crime He agrees to it, he concedes, he says yes That's part of our strategy If he and trial counsel Are agreeing on trial strategy And that's one promise Let me take you through this as I read the record To make sure this is true Seems to me before Cox's closing Argument And before jury instructions are given Rangel suggests He's conceding Cox has done a lesser Or uncharged offense At that point, the trial court Speaks to Rangel and to Cox And says Just a minute, do you have the permission To do this And Cox said at that point He did not have permission to pursue But then Rangel Was put under questioning And Rangel said to the trial Court that he did want to concede The lesser uncharged Offenses That's as I understand it I understand that and my point Is from the standpoint of Rangel It was his understanding That that was going to be one of The defense strategies Despite the fact that there may be an inconsistency Between what the lawyer says and what the client says The client not only agreed To it but it was his understanding That that was going to be part of The defense strategy I would point out Though that because The concession was not to the charged Crime and keep in mind If the jury believed that Rangel was guilty of Malicious destruction of property They would have had to acquit That's the strategic point Because he was never charged Have I heard that Nevada Supreme Court May have finding that he did consult I'm not really impressed With it And certainly I think there would be an issue On the concession point Had he conceded The charged crime but I think that's a key issue The U.S. Supreme Court's next in case Might use another point As far as Let's discuss if with your permission Let's discuss the authentication Of the phone call because that seems to be The issue At least from the standpoint of Mr. Rangel I am not convinced it is too big of an issue Based on the strength of the state's case And the admission of the police In the store that the stuff they're looking for Is over by the Christmas tree To the extent that this phone call to the girlfriend Was important Again Judge Smith is correct That there was a strategic decision Based on his investigation That he didn't want to go into The authentication of that phone call Because Hernandez was the detective Who extradited Rangel back from Spokane, Washington And he didn't want to get into the issue Because he didn't want the jury to know The guy had fled And was gone for a year and a half So There was The partial authentication Because in trial Hernandez Said before they played the tape I recognize the voice What they didn't do was go The second step And asked why And that's not something trial Johnson wants to do He can't Put this guy on the stand Trial counsel was limited in this case This case had seven or nine Prior felony convictions He's a career criminal He fades to the middle of trial I sent him on the Verger trial on the calendar Called Verger He's gone for a year and a half Trial counsel There's no defense He's caught red handed not once But twice within 20 minutes And he makes a concession to the police That they can find the stuff He took from the car You know I got to be honest I don't feel bad I don't feel a whole lot of sympathy In a lot of cases For trial defense attorneys Simply because of what I do But in this case I think Mr. Cox Did everything he could do And I just don't see anything else That Cox is going to accomplish Based on the allegations In the petition So we ask the court to uphold the decision Thank you very much Thank you Do you want to rebut for a minute? Hey Give me a minute Thank you your honor I just want to clarify two quick things One, there was no investigation by defense counsel Into the telephone call The only thing he said is that he pleaded For Mr. Riley And Riley did not disappear And it was still on the phone But there was no investigation as to authentication And in fact the detective did justify How he was familiar with Mr. Riley's voice He said, I listened to a whole bunch of phone calls And some of them Robert Riley stated his whole name That's how I came to familiarity with his voice There was no danger that by objecting On authentication grounds That the issue of extradition Ever would have come into play The second point is, I guess This was certainly a difficult trial For a trial counsel However, strong evidence And good evidence I apologize for the deal though If Hernandez was involved With the extradition That would have also helped He would have been a phone voice Yes, a voice identification and authentication Are two different things The detective was not the right witness And never explained how a phone call That was recorded from the Clark County Detention Center Ended up in a police database That's authentication Not voice identification I don't want to argue with you Or question you about that I'm not sure you're right about that I mean, there's two ways To authenticate what the voice is coming in You're talking about Whether we've got to go through all The review to find where this Tape has been and why it's been there And who kept it and all that Somebody's got to say it's somebody's voice Or it doesn't come in, period And the detective did that And he gave a benign explanation That was not at all damaging And did not involve the extradition questions There's no reason that that would have been a factor Thank you Thank you, your honors Thank you very much This case, Rangel v. Hernandez Submitted on 1615232 Will now turn to Amistad Christiana Church Versus Las Vegas 1517
judges: Fisher, Schroeder, N.R. Smith